May I please the Court, Charles Byrd, on behalf of Radioshack, with the Court's permission, I would reserve five minutes. You may. Thank you. The District Court erred by giving Chevron deference to a comment in a final rule explaining why the DOL did not change a non-authoritative regulation. If the District Court had had the benefit of Smith v. Egon Company's pension plan, this wouldn't happen. One thing the District Court got right is that but for deference, Radioshack's compensation plan does not violate the FLSA. And I will go on without further discussion of deference on the presumption that what we're talking about here is whether the plan does or does not violate the FLSA. Overnight v. Missile. Did you raise overnight in the trial court? Overnight is the foundation for 778.114A, which is what the trial court discussion was all about. The trial court's decision cites overnight. In fact, in doing that, the trial court says that that the final rule, the statement of mood in the final rule, in the trial court's reflects an about-face, that's the court's word, from the DOL's prior understanding of what overnight v. missile means. Now, embedded in the court's question, I suppose, is whether the Court of Appeals should decide and should look at overnight v. missile and, in fact, should look at the FLSA, not just regulation.114, in deciding the case. And I suppose it is within the power of the Court of Appeals to say, well, the district court got deference wrong, so the district court's decision is wrong, and we're going to send this case back to the district court to decide what the law is. Given that the district court got the law right but for deference, that would seem to be an especially large waste of time. We know what the district court would decide under those circumstances. If the district court is told you were wrong about deference, the final rule is not part of this case, decide, go back and decide, half of the motion to dismiss based on what the law really is, the district court would say, well, the second half of the motion to dismiss will be decided the same way as the first half of the motion to dismiss, since the law before the final rule is the law after the final rule, and that, as I, impersonating the district court, as I wrote long ago, is overnight versus missile. So no, we did not cite overnight to the district court. In a field like this, where one's dealing with a regulation that really recites what the Supreme Court decided in So overnight is based on a contract for a fixed weekly wage for regular contract hours. RadioShack's compensation plan contains exactly that kind of agreement. Paying an employee a periodic bonus for the fact that the critical agreement does exist. Mr. Bird, is it accurate to say that prior to, I guess it was the 2008 proposal that was eventually rejected in the final rule, prior to that date, there was no federal case that said an employer's payment of a performance bonus, as opposed to some hours-related bonus, was a violation of 778.114. Is that an accurate statement of the law, or was there some disagreement on that? I don't agree that that's an accurate statement of the law, nor would I say there was any disagreement. There is the plaintiff's position here is, well, that's commissions, this is bonuses. And that, to me, is a completely false dichotomy. But there were a number of district court cases, right, that addressed that question, whether a performance bonus is inconsistent with this flexible weekly wage method, right?  Okay. Were there not many before 2008? I'm just trying to see if there was common ground, frankly, in support of your position prior to the 2008 proposal in the courts, or whether there was disagreement. I would not argue that there was, quote, common ground, unquote. That goes too far. I would say that the Lance case, and again, we're dealing here all with district court cases, so I'm very wary of calling anything common ground under those circumstances where we have no circuit-level decision about performance-based bonuses. The point of cases about commissions is that a commission is simply a bonus based on a single transaction, where a bonus like Radio Shack's here is a bonus based on a series of transactions, not did you sell a package of batteries, it's of how much was sold in your store and what are you going to get as a percentage of what was sold on your store. So it's, in effect, a multiple transaction commission, and there's no logical difference between that kind of a commission and a bonus. And the Lance case was definitely decided in 2005, and the only place that one can say there's a series of cases is that there were definitely cases saying that when an employer pays differential rates for desirable and of a fixed weekly wage. And that, I've spoken of overnight, but again, overnight is simply the basis on which the DOL wrote its non-authoritative regulation, .114A, which uses language that is indistinguishable. No court has ever attempted to decide otherwise. So we are very definitely on the side of what was then the consensus. I think the other thing that one can look at, and this is the case out of Texas that was decided in 2011, and I'm sorry, I'm found it compliant. And so I think part of what underlies the notice of proposed rulemaking is an understanding in the labor and employment community, regardless of what district courts had decided, that performance-based bonuses were okay. That's also reflected in 778.109, .120, and, of course, even more explicitly so for commissions. So that's taken me through the point that .114 and overnight are really the same thing. Plaintiffs nevertheless contend somehow that weekly wage for contract hours worked. Regulations don't do that. DOL has never said that. And DOL couldn't say that because it's inconsistent with its explanatory regulations about calculating look-backs for either commissions or bonuses. I would sum up my opening with this. How can a phrase that is in a Supreme Court opinion that changed and no language in the regulation changed? Our position is that can't be so. Things don't change that way, and the law before May 11 was the law after May 11, and Radio Shack's program is the law after May 11. So I think it's important that we consider how things could change overnight without there being a change in law by Congress or the Supreme Court or a change in the regulatory language. Thank you, Your Honor. Thank you. Good morning, and may it please the Court, my name is Jason Bristol and I represent the Apple Lee Michael Sison. Your Honors, before I get into the main portion of my argument, I'd like to address some of the points raised in the opening argument. Judge Keithledge, you asked whether or not there was any decision out there, any federal decision, addressing this question, and there was in fact one circuit Court of Appeals decision, the O'Brien case, out of the First Circuit from 2003. And I would like to ask that Your Honors look very closely at O'Brien because number one, O'Brien got the analysis right. Under the statute, and number two, O'Brien actually had both types of bonuses. If you look closely, you will see that there were both hours-based bonuses, but there were also bonuses paid based on longevity and other items that were totally unrelated to hours worked. And the central point in O'Brien for this Court is how does the statute itself work. The way the statute works is under Section 207, we know that the FLSA requires that all remuneration be taken into account when determining an employee's regular rate. All remuneration unless it's excluded under 207E1-8. There is no exclusion for bonuses whether they're called performance or hours-based or otherwise that applies to this particular scenario. We start with the act itself. We know that when these bonuses are paid and RadioShack goes to calculate the employee's regular rate as hourly employees, their regular rate is going to fluctuate. It will not in fact be fixed. And so I would ask that the Court look to O'Brien. Second is the regulation 778.114. This regulation has been on the books since President Johnson was in office. And 778.114 requires that employees be paid a fixed salary. This Court has recognized that as a requirement since 1986 in the Highlander case followed by the Fakure case in 1987. This circuit enforces those requirements as a regulation. And importantly, the other side of the coin here, Your Honors, is that employers are allowed to rely on this regulation to prove that they acted in good faith. The regulation is the underpinning for the plans themselves when people use the fluctuating workweek rule. So we're not approaching an issue that is brand new. It is a case of first impression, but this is not a new issue. We have had the statute on the books, 207, since 1949. We have had 778.114 in place since 1968. And then we fast forward to 2008. Well, before we do that, Section 778.114, as I'm sure you know, says that in describing the flexible weekly wage, am I getting that right? Fluctuating. Fluctuating method. It says under that method, the employee will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek. Why doesn't that make the focus of our inquiry here whether the additional compensation, the bonus, is somehow based upon the hours worked or based upon something else? And if it's based upon the hours, then it would be inconsistent. It would be inconsistent with the regulation. Why isn't it true that if it's not based upon the hours, that it is consistent with the regulation? We go right back to the statute, Your Honor, and we go back to O'Brien. O'Brien did the right analysis. O'Brien said it doesn't mean fixed minimum. That's not what MISL says. That's not what the statute says. It's fixed. And so O'Brien teaches us that from the First Circuit. And again, it can't work that way under the statute. We're really not here arguing about a comment and a final rule. We're going further back in time to how the statute itself works. Let me ask you this. I fully respect your argument about the statute, but if this were a statute, isn't the reading that I just gave you, doesn't that suggest our focus would be on whether the bonus was based on hours? Just based upon the words of this regulation, wouldn't the focus properly be were they paid more because of hours or not? I respectfully disagree. We would get into a gray area, Your Honor, where we would be splitting hairs. The courts would be required to split hairs when we don't need to do that when we have the statute. The other point, Your Honor, is if you go back and look at MISL at 580 of that opinion, I mean MISL specifically indicates that that weekly payment does not fluctuate. Nothing else flows in. And the regulation, as you heard my appointee point out, is based on MISL. So we have the Supreme Court in 1942 also telling us that fixed means fixed. If you look at that opinion, you will see that there is no contemplation or any hair splitting about what's happening there. It's simply a fixed salary. I would also like to remind the court this morning that we are here on a 12B6 motion, and so the real inquiry before the court is whether or not my client stated a plausible claim and that he has a right to go forward with that. And again, as I've articulated, I believe that the statute, which shows that this is not a fixed salary, combined with the regulation, which requires a fixed salary, combined with now the actions of the United States Department of Labor through full notice and comment rulemaking, indicate that, again, Mr. Sison has come forward with a plausible claim that Judge Boiko deserves to be affirmed in his decision. With respect to the final rule, your honors, I believe that my client wins this case with or without any comment and arguably with or without the final rule. What the final rule did was the department looked at a landscape that was actually void on some of these points with respect to the law, other than I would say O'Brien at the time, and they looked at increasing the ability of employers to use the bonuses. So they put out an NPRM in 2008. But the bonuses in that case were bonuses for premium time working hours that were not particularly desirable, correct? Respectfully, your honor, it was all bonuses. And if you look at the commentator's suggestions, if you look at amicus brief filed in other cases, all bonuses are important, again, because we don't want to get into the gray area. So they put out an NPRM for all bonuses. They took comment over a couple of years. The Federal Register indicates that the comments were sharply divided. And the Department of Labor thoroughly, also based on what's in the Federal Register, weighed the pluses and the minuses of allowing that type of a rule and concluded that no bonuses would be allowed. I mean, the proposal, it says paying employees bonus or premium payments for certain activities such as working undesirable hours is a common and beneficial practice for employees. That seems to be at least the focus of the proposal and what they're trying to make lawful, I suppose. That's not what we have here. I didn't mean to interrupt. No, not at all. You've made my point for me already, though. The cases that they were looking at in 2008 were O'Brien. There weren't cases dealing with performance-based bonuses that the DOL would have been looking at. There was a void of that authority. Most of the cases that Radio Shack cites are before the final rule, but most of them in between the two periods of time, between 2008 and 2011. So the only thing that the DOL would have been looking at, at least when it references a case, would have been cases like O'Brien. And Radio Shack cites a number of other cases where its own compensation policy was attacked. But if you look closely at each of those cases, those were not challenges to the fixed salary requirement. So at the beginning of the argument, you pointed out probably one of the best points, which is that's what the DOL was looking at because that's what was out there. And this is a case of first impression. This challenge is one of first impression for all circuits. We have this Wills case from the Southern District, I guess, of New York. And obviously, I'm sure you're familiar with that litigation. I see your name here. What do you think that Judge Engelmeyer got wrong in that opinion? With all due respect to Judge Engelmeyer, he absolutely missed the mark on the analysis under Section 207. He relied on a case called Soderberg, Your Honor, which is also cited in our papers. And if you look at the Soderberg decision, which is a district court case from Minnesota, the district judge there got the analysis under 207 wrong, meaning the district judge did not understand the difference. He drew a distinction between hours-based and performance-based bonuses that's not in the statute that was simply an error. And Judge Engelmeyer picked that up, Your Honor. I mean, he clearly accepts that distinction. I guess to sort of revise the question I posed to Mr. Berg, wasn't there a consensus in the reported district court opinions after the proposal and before the rejection of the proposal in that time window that said performance-based bonuses are consistent with the regulation? No, Your Honor. Was there disagreement? Well, there was disagreement. There were other cases. The Lance case is a commission's case. They keep attacking us for not saying commissions are the same. But let's set that aside. I'm just trying to understand the legal landscape. Was there a reported district court opinion that said a performance-based bonus is inconsistent with this fluctuating workweek methodology as set forth in the regulation? I would take you back to O'Brien because those types of... No, that's a no, though, right? That's... There's not a case that... Is there any case that squarely holds what... I mean, they've got some cases, right? I mean, they've got some of the cases during the pendency of the proposal. Soderberg line cases, yes. Right. They've got... Well put. So they've got some, and, you know, we're here to sort of make up our own minds, but I'm just curious. Is there another... Is there a case that comes out your way in this constellation? O'Brien. But O'Brien... Okay. No, I understand your argument. That's fine. And I apologize for going back to that, but... I know you talked about long-term... ...the regulation and the proposed rulemaking. Okay. And again, with the proposed rulemaking, it matters that that went through full notice and comment rulemaking. And my opponent brought up the Smith case that Judge Batchelder recently authored dealing with deference issues with respect to the DOL. And before my time is up, I do need to briefly address that. Smith is very interesting because while it was submitted by the appellant in this action, the more I read it and the more I studied it, I thought maybe that it was something that should have been submitted by the appellee. And that is because in Judge Batchelder's analysis, while she applied no Chevron deference and no Skidmore deference, she was considering a position taken in an amicus brief. What we have here is full notice and comment rulemaking and thorough consideration by the Department of Labor. It's a very, very different case. We have 72 years since the Missle decision where Missle said the rate per hour does not vary. We have 65 years since 207 was added to the FLSA, requiring that all bonuses, regardless of the type of the bonus, flow into the regular rate. We have 50 years of 778.114 requiring a fixed salary. We have 778 itself and the fact that this regulation is contained in subpart B, not in the general considerations of the DOL. Part 778, Your Honors, is the section of the Code of Federal Regulations that every business in America relies on when looking at how to determine or how to calculate overtime pay. It is the authoritative source and has been so since 1968. In addition, and as I previously mentioned, we had full notice and comment rulemaking. The department took comments from both sides, acknowledged in the Federal Register that the comments were sharply divided, thoroughly considered the issue, and came down on the side of bonuses are incompatible with the fluctuating workweek rule. Does it count as rulemaking if they actually didn't change the rule at all? Is there a case that says that that counts as rulemaking for purposes of Chevron? Yes, Your Honor, there's a logical outgrowth test. There's the notion that when something is proposed to be adopted, it puts everyone on notice, and it is logical to understand that when something is proposed to be adopted, that it may also not be adopted, right? It puts everyone on notice that an up or down vote is coming on an issue, and logically the agency may not adopt that. It puts everyone on notice of what may come from the proposed rulemaking. That's the importance of the administrative process, and that's why we use the Administrative Procedure Act process to give regulations the force of law. Is there a case, though, that looks to some commentary with respect to a decision not to change the rule and gives Chevron deference to that commentary? I see that my time is up. May I briefly conclude? Yeah, Your Honor, Long Island Care at Home v. Koch is a U.S. Supreme Court decision from 2007, and in that decision, the Supreme Court struggled with what is these administrative law issues are difficult issues, but in Long Island Care at Home, the court looked at differing opinions, an opinion in an advisory memorandum that arguably did not match a prior notice and comment rulemaking rule, and the court looked at the issue and said, based on the expertise of the entity of the federal government, based on the thoroughness, the same analysis that Judge Batchelder applied in Smith, based on all of those factors, that that particular situation did have the force of law. And we respectfully request affirmance of Judge Boyko's determination that Mr. Sison has pled a plausible claim that should go forward. Thank you for your time. Thank you. I would like to start by going back to the language of overnight and Regulation 114. Overnight is fixed weekly wage for regular contract hours. 114 is as straight-time pay for whatever hours. A lot of the colloquy here has been about bonuses changing. According to counsel, nothing, absolutely nothing can change the fixed weekly wage or the straight-time pay for whatever hours. That is not what the text of those views is. But Mr. Bristol would say he trumps your arguments about the statute, or I'm sorry, about the regulation. By referring to the statute, Section 207, he says there is no exception to the rule, I guess in A-1, that would allow for performance-based bonuses to be paid in the manner that Radio Shack is paying them. What's your response as a statutory matter? There are multiple errors in that. Okay. Which exceptions apply, do you think? No exceptions in subsection E apply or are relevant. That argument is based on the false equivalency of the language that I quoted from overnight and the regulation with the regular rate, which is what is defined in subsection E. And so the first error is starting with a non-statutory assumption that is contrary to what the Supreme Court wrote in overnight, that regular rate is the same thing as fixed weekly wage for regular contract hours, or in the DOL's language, regular rate is the same thing as straight-time pay for whatever hours he is called upon to work. There is, as I said at my first turn at the lectern, there is nothing in Supreme Court case law, there is nothing in appellate court case law, there is nothing in statutory text, regulatory text, there is nothing in the final rule that supports that false equivalency. What is the relation between the term regular rate and straight-time pay or fixed amount as straight-time pay? Is one subsumed in the other or are they just totally different animals? They are totally different animals. The regular rate is a statutory term and it is the foundation for calculation of premium pay for overtime. The question whether an employer qualifies to use the fluctuating workweek method is based on the Supreme Court's language describing a fixed weekly wage for regular contract hours. An hourly wage, is that kind of what we are talking about? Is that too crude? That's too crude. The whole point of overnight is if the employee was paid on an hourly basis, then you have no problem doing the calculation. What do you do when the employee is a salaried employee? When that salary agreement is one that the employee will be paid the same salary, wage is a broad term embracing salary, if you go back to the dictionary, when the employee is paid the same salary, regardless of whether the employee works 30 hours, 40 hours, or 80 hours, what is the regular rate? And the regular rate, if it were hourly, would be 140th. But if it's salary, it's how many hours did you work, divided into what is the pay. So they are textually and conceptually unrelated. The other thing is plaintiff's contention today at this lectern is that all bonuses disqualify an employer from using the fluctuating workweek method. That's really quite different from their brief, which all the legal analysis up to this point has been that a bonus that requires recalculation of the regular rate, a retroactive look back the way a commission does, kicks an employer out of the fluctuating workweek method. But there are lots of bonuses under 207E1 and 207E3A that do not require a recalculation. And now plaintiff is saying all bonuses, not just the ones that fit even into the previous, in my view, illogical argument. And all of this, I find, filled with another conundrum, which is that on page 8 of the Apolese brief, the plaintiffs refer to the May 5, 2011 date, the effectiveness date of the final rule, and say, as of then, employers could no longer utilize the FWW if their compensation of workers included bonuses, which bases their case not on the discussion we've been having today, but entirely on that mood comment in the final rule. I would close, if I may, very briefly with a comment about O'Brien, an extremely complex system of compensating police under a public collective bargaining agreement where hours-based bonuses kicked that municipality out of being able to use the fluctuating workweek method. And again, plaintiff's analysis of O'Brien is based entirely on the false equivalency of the contract versus the statutory regular rate. And we've discussed the error in that equivalency at length. Thank you, Counsel. Thank you very much, Your Honor. Case will be submitted.